UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

SCOTT BIERCE,                                    Case No. 23-Civ-2375 (CS)

                                        :

                    Plaintiff,

        -against-                               :

ROSSANA ROSADO, et al.,                          :

                    Defendants.

------------------------------------------------------ X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS THE COMPLAINT**

                                        LETITIA JAMES
                                        Attorney General of the
                                            State of New York
                                        <u>Attorney for Defendants</u>
                                        28 Liberty Street-18th Floor
                                        New York, New York 10005
                                        (212) 416-8654

STEVEN N. SCHULMAN
Assistant Attorney General
        <u>of Counsel</u>


September 14, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………….. ii

PRELIMINARY STATEMENT …………………………………………………….. 1

SUMMARY OF ALLEGATIONS …………………………………………………….. 2

PROCEDURAL BACKGROUND …………………………………………………… 4

ARGUMENT ……………………………………………………………………. 4

    I.       SUFFICIENCY OF COMPLAINT STANDARD ……………………… 4

    II.      OVERVIEW OF APPLICABLE STATUTES AND REGULATIONS … 6

    III.    PLAINTIFF WAS NOT DEPRIVED OF A PROPERTY INTEREST
            WITHOUT DUE PROCESS BY ANY OFFICIAL OF DCJS …………….... 9

            A.      The Balance Of Pertinent Interests Favors Defendants ……………. 9

            B.      The Allegations Fail To Show That Plaintiff Was Denied Due
                  Process ………………………………………………………. 14

            C.      The Procedure That Plaintiff Seeks To Compel Is Already In Place,
                  But Does Not Apply Retroactively To Him ……………………… 19

    IV.    MOST OF THE CLAIMS AGAINST THE INDIVIDUAL  DEFENDANTS
            FAIL FOR ADDITIONAL SEPARATE AND INDEPENDENT REASONS .. 21

            A.      Prospective Relief Cannot Be Awarded Beyond A Defendant's
                  Official Capacity To Carry It Out ……………………………… 21

            B.      Damages Are Unavailable ……………………………………….. 23

CONCLUSION........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arzuaga v. Quiros,*
No. 3:10CV1200 (DJS), 2016 WL 8199306 (D. Conn. Feb. 18, 2016) .................................22

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011).......................................................................................................... 24-25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).......................................................................................................5, 16, 23

*Aufiero v. NYS DCJS,*
173 A.D.3d 1320, 103 N.Y.S.3d 610 (3d Dept. 2019) ......................................................7, 11

*Barnum v. Millbrook Core Ltd., P'ship,*
850 F.Supp. 1227 (S.D.N.Y.1994) .........................................................................................4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).....................................................4, 5

*Blackburn v. Goodwin,*
608 F.2d 919 (2d Cir. 1979)..............................................................................................21, 22

*Boddie v. Connecticut,*
401 U.S. 371 (1971).............................................................................................................12

*Comerford v. Village of North Syracuse,*
No. 5:18-cv-01143, 2021 WL 950974 (N.D.N.Y. Mar. 12, 2021) ........................................24

*Correction Officers Benev. Ass'n v. Kralik,*
No. 04 Civ. 2199 (PGG), 2009 WL 856395 (S.D.N.Y. Mar. 26, 2009)................................21

*Dixon v. Love,*
431 U.S. 105 (1977).............................................................................................................12

*Durham v. Rapp,*
64 F.Supp.3d 740 (D. Md. 2014) .......................................................................................24, 25

*Giraldo v. Kessler,*
694 F.3d 161 (2d Cir. 2012)....................................................................................................5

*Goe v. Zucker*,
    43 F.4th 19 (2d Cir. 2022) ................................................................5

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .......................................................................23

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010) .............................................................5

*Kamen v. American Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir.1986) .............................................................6

*Kitto v. City of Albany*,
    213 A.D.3d 1165, 185 N.Y.S.3d 343 (3d Dept. 2023) ..................... 7, 12-13, 16, 20

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) .......................................................................20

*Locurto v. Safir*,
    264 F.3d 154 (2d Cir. 2001) ........................................................ 13-14

*Makarova v. United States*,
    201 F.3d 110 (2d Cir.2000) ..............................................................6

*Marsh v. Kirschner*,
    31 F.Supp.2d 79 (D. Conn. 1998) ......................................................21

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................10, 12, 14

*Morrissey v. Brewer*,
    408 U.S. 471 (1972) .......................................................................10

*Moulton v. County of Tioga*,
    No. 3:22-cv-00340 (AMN/ML), 2023 WL 4627646 (N.D.N.Y. Jul. 19, 2023) .....................24

*Narumanchi v. Board of Trustees of Connecticut State Univ.*,
    850 F.2d 70 (2d Cir. 1988) .......................................................... 17-18

*Oneida Indian Nation v. Madison County*,
    665 F.3d 408 (2d Cir. 2011) ..............................................................9

*Otero v. Comm. of Social Security*,
 No. 12–CV–1434 (WFK)(RLM), 2013 WL 1934074 (E.D.N.Y. May 8, 2013)....................15

*Pani v. Empire Blue Cross Blue Shield*,
 152 F.3d 67 (2d Cir.1998).........................................................................................6

*Patane v. Clark*,
 508 F.3d 106 (2d Cir. 2007)(per curiam)............................................................. 4-5

*Peo. ex rel. Britt v. Harder*,
 211 A.D.3d 1289, 180 N.Y.S.3d 374 (3d Dept. 2022) ...........................................20

*Peo. ex rel. Griffin v. Baxter*,
 208 A.D.3d 986, 173 N.Y.S.3d 87 (4th Dept. 2022) .............................................20

*People v. Ferrara*,
 128 Misc.2d 687, 490 N.Y.S.2d 462 (Sup. Ct. Richmond Cty. 1985) ....................... 11-13, 19

*Poe v. Leonard*,
 282 F.3d 123 (2d Cir. 2002).....................................................................................24

*Richardson v. Selsky*,
 5 F.3d 616 (2d Cir. 1993).........................................................................................25

*Robison v. Via*,
 821 F.2d 913 (2d Cir. 1987).....................................................................................24

*Schneider v. Chandler*,
 No. 16cv6560 (DLC), 2018 WL 770395 (S.D.N.Y. Feb. 7, 2018) ................................12, 14

*Smith v. O'Connor*,
 901 F.Supp. 644 (S.D.N.Y. 1995) ...........................................................................17

*Spinelli v. City of New York*,
 579 F.3d 160 (2d Cir. 2009).....................................................................................10

*Stallworth v. New York*,
 No. 16-CV-03059 (PAE) (BCM), 2017 WL 4355897 (S.D.N.Y. Jul. 27, 2017) ...................22

*Stevens v. NYS DCJS*,
 206 A.D.3d 88, 169 N.Y.S.3d 1 (1st Dept. 2022).....................................................7

iv

*Stidham v. Peace Officer Standards and Training*,
   265 F.3d 1144 (10th Cir.2001) ...............................................................24

*Walker v. Daines*,
   No. 08–CV–4861 (JG)(LB), 2009 WL 2182387 (E.D.N.Y. Jul. 21, 2009)............................24

*Will v. Michigan Dept. of State Police*,
   491 U.S. 58 (1989) ...............................................................23

*Woodford v. Ngo*,
   548 U.S. 81 (2006) ...............................................................18

## Constitutions

Constitution of the United States ...............................................................17

## Federal Statutes

42 U.S.C.
   § 1983...............................................................1, 5, 23
   § 1997e(a) ...............................................................18

Civil Rights Act of 1871 ...............................................................17

Prison Litigation Reform Act...............................................................18

## State Statutes

NY Administrative Procedure Act
   §§ 301 <u>et</u> <u>seq.</u> ...............................................................19

NY Executive Law
   §§ 839 <u>et</u> <u>seq.</u> ...............................................................9
   § 845...............................................................*passim*
   § 845(1) ...............................................................7

   § 845(2) ...............................................................7
   § 845(2)(a) ...............................................................11
   § 845(3)(b) ...............................................................13, 19, 21, 22
   § 845(4) ...............................................................7

   § 845-a ...............................................................12
   § 845-b ...............................................................24

NY General Municipal Law

§ 209-q ....................................................................................... *passim*
§ 209-q(1)(b) ..........................................................................................8, 10
§ 209-q(1)(b-1) ....................................................................................7, 8, 11
§ 209-q(1)(c) ...............................................................................................10

Professional Policing Act of 2021 ................................................. 7-9, 11, 13, 20, 23

## State Regulations

9 NYCRR

§§ 6020.1 <u>et seq.</u> ......................................................................................11
§ 6020.7 ...................................................................................................11
§ 6056.1 <u>et seq.</u> .......................................................................................8
§ 6056.2(c) .........................................................................................16, 18
§ 6056.2(g) ...................................................................................... 8, 10-11
§ 6056.2(h) .........................................................................................8, 10
§ 6056.4(c) .........................................................................................8, 16
§ 6056.4(d) .....................................................................................2, 8, 16
§ 6056.7 ................................................................................ 4, 9, 14, 17-19
§ 6056.7(a) ...............................................................................................13
§ 8056.7 ...................................................................................................19

## Rules

Fed.R.Civ.P. 12(b)(1) ...............................................................................1, 6

Fed.R.Civ.P. 12(b)(6) ...........................................................................1, 4, 6

NY CPLR
Article 78 ............................................................................................. *passim*
§§ 7801, 7803 ..........................................................................................17

## Miscellaneous Authorities

Note, Matthew Hanner, 55 Columbia Journal of Law and Social Problems 57, 95 (Fall
    2021) ...................................................................................................11

SCOTT BIERCE v. ROSSANA ROSADO, et al., No. 23-Civ-2375 (CS)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

**PRELIMINARY STATEMENT**

Defendants Commissioner Rossana Rosado, Stephanie Russell and David Mahany, all officials of the New York State Division of Criminal Justice Services (DCJS), by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint.  Plaintiff Scott Bierce, a former Town of Fishkill Police Sergeant, brings this action under 42 U.S.C. § 1983, alleging denial of due process in invalidation of his certification as a police officer under New York law following the termination of his employment with the Town of Fishkill Police Department.  Defendants move to dismiss for lack of subject matter jurisdiction with respect to some issues pursuant to Fed.R.Civ.P. 12(b)(1) and otherwise for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6).  Plaintiff's decertification was automatic upon the Town of Fishkill's report that Plaintiff was terminated from employment for cause.  Plaintiff did not avail himself of procedures available for ensuring the accuracy of the information on which his decertification was based.  Plaintiff's claim for prospective relief seeking a right for all officers to a hearing before DCJS is baseless because such a procedure now exists, notwithstanding that it does not apply retroactively to Plaintiff.  Defendants Russell and Mahany, the only Defendants sued in their individual capacities, have qualified immunity against any damage claims.  For those and other reasons as set forth below, Defendants' Motion should be granted and the Complaint and the

Action should be dismissed.[1]

## SUMMARY OF ALLEGATIONS

For the purpose of this motion only, the factual allegations of the Complaint (Cmpt) are assumed to be true, but not conclusory allegations, arguments or conclusions of law.

Plaintiff is a former Town of Fishkill Police Sergeant.  Cmpt ¶¶ 7, 11.  Defendant Rosado is Commissioner of DCJS and is sued in her official capacity only.  Id. ¶ 2.  Defendants Russell and Mahany are identified only as employees of DCJS and sued in both their individual and official capacities.  Id. ¶¶ 3-4.[2]

Plaintiff was a certified police officer in New York State for 35 years, most of those years employed by the Town of Fishkill Police Department.  Cmpt ¶¶ 6-7.  In 2019, Fishkill Chief of Police James Schepperly commenced an unspecified investigation against Plaintiff purportedly in reprisal for an unspecified exercise of free speech rights.  Id. ¶¶ 9-10.  On December 2, 2019, Plaintiff resigned his employment allegedly because of a hostile work environment.  Id. ¶ 11. Plaintiff alleges that the resignation occurred before disciplinary charges were brought.  Id. ¶ 12. Plaintiff's resignation was accepted by the Town of Fishkill on December 4, 2019.  Id. ¶ 13.  Chief Schepperly reported Plaintiff's resignation as "for cause" to Defendants, resulting in the decertification of Plaintiff as a police officer pursuant to General Municipal  Law § 209-q and 9 NYCRR § 6056.4(d) (eff. Apr. 12, 2017), now § 6056.4(e).  Id. ¶ 15.  As a consequence of decertification, which Plaintiff learned about in January 2020, he was no longer able to work as a police officer in New York State.  Id. ¶ 16.

---

[1] Without waiving the issue if the lawsuit continues, Defendants have determined not to raise in this motion the statute of limitations issue presented in the premotion letter and discussed at the premotion conference.

[2] At the pertinent time, Defendant Russell held the title of Criminal Justice Program Specialist and Defendant Mahany held the title of Associate Training Technician.

In or about the end of February 2020, Schepperly resigned as police chief and was replaced by Chief Dworkin, who refused the request of the new Town Supervisor of the Town of Fishkill to contact DCJS to "correct" Schepperly's report regarding the nature of Plaintiff's separation from employment.  Cmpt ¶¶ 17-18.  In April 2020, the new Town Police Commissioner requested that Plaintiff be recertified on the grounds that  he departed Town service in good standing and there was no basis for decertifying him in the first place.  Id. ¶¶ 19-20.  "Defendants" rejected this request because it was not made by the Police Chief.  Id. ¶ 21.

During Summer 2020, former Chief Schepperly continued to attempt to persuade Defendants that Plaintiff's decertification was justified.  Cmpt ¶ 23.  Defendants did not provide Plaintiff with this communication from Chief Schepperly, though Plaintiff does not allege that he asked for it.  Cmpt ¶ 24.

In August 2020, the Town Board passed a resolution, presented to Defendants, requesting that Plaintiff be recertified.  Cmpt. ¶ 25.  Defendants continued to decline to recertify Plaintiff.  Id. ¶ 26.  Plaintiff alleges that Defendants never communicated directly with him, but does not allege that he ever tried to communicate with them.  Id. ¶ 27.

The Complaint does not allege that Plaintiff himself, at any time, requested that Defendants or anybody at DCJS take any remedial action to correct what he alleges to be inaccuracy in the report of his departure from the Town of Fishkill Police Department as being for cause.

Plaintiff's other allegations, including that he, in fact, resigned in good standing, and that Defendants have no procedure by which Plaintiff could request an opportunity to show that he did not resign for cause, are conclusions of law.  Plaintiff alleges that he has been deprived of a property interest in continued certification as a law enforcement officer without due process.  Cmpt ¶¶ 39-40.  He seeks damages, declaratory relief that law he does not identify is unconstitutional,

and injunctive relief restoring Plaintiff's certification and prohibiting DCJS from decertifying police officers generally without due process.  Cmpt, Prayer for Relief.

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on March 21, 2023.  ECF Doc. # 1.  A Notice of Appearance was entered on behalf of Defendants on June 20, 2023.  ECF Doc. # 14.  Following an exchange of premotion letters, on July 21, 2023, the Court held a premotion conference on the current motion.   The Court's minute entry states that "[t]he Court grants Plaintiff leave to amend Complaint; however, Plaintiff's counsel chooses not to."  Unnumbered electronic minute entry of conference of July 21, 2023.  Counsel for Defendants also agreed to explore with DCJS the possibility that it might apply a new procedure pertaining to resolution of registry conflicts, 9 NYCRR § 6056.7, to Plaintiff.  DCJS has declined to do so because the new procedure does not apply retroactively, as will be discussed in the Argument portion of this brief.

## ARGUMENT

## I.    SUFFICIENCY OF COMPLAINT STANDARD

Defendants move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  As stated by the Second Circuit:

> In order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman [v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)].

Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007)(per curiam).  Where documents incorporated by reference contradict the written allegations, the documents control.  See Barnum v. Millbrook Core Ltd., P'ship, 850 F.Supp. 1227, 1232-33 (S.D.N.Y.1994), affd. without op., 43 F.3d 1458 (2d

Cir.1994).  Otherwise, the "well-pleaded facts" are taken as true and considered in the light most favorable to Plaintiff.  Patane, 508 F.3d at 111.  In reviewing a complaint for legal sufficiency, the Court may "take judicial notice of relevant matters of public record."  Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012).  Applicable State regulations are subject to judicial notice.  See Goe v. Zucker, 43 F.4th 19, 28-29 (2d Cir. 2022).

The Supreme Court applied the Twombly plausibility standard to civil rights lawsuits in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Because 42 U.S.C. § 1983 does not permit recovery under a vicarious liability theory, Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676. Although detailed factual allegations are not required, the Twombly standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Twombly, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

Iqbal, 556 U.S. at 678.  See Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010)(noting two pronged approach of Iqbal, 556 U.S. at 678-79: 1) "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and 2) determining whether the

"'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief'").

Although qualified immunity is an affirmative defense, it may be considered in a 12(b)(6) motion when the issue can be determined from the face of the Complaint.  See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74-75 (2d Cir.1998).

Defendants also move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  The Court may consider matters outside the pleadings under Rule 12(b)(1).  See Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir.1986).  Plaintiff bears the burden of showing subject matter jurisdiction by a preponderance of the evidence.  See  Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000).

## II.    OVERVIEW OF APPLICABLE STATUTES AND REGULATIONS

The statutory framework underlying the certification of municipal police officers in New York State has been described by the Appellate Division of the State Supreme Court.

> General Municipal Law § 209–q(1)(a) requires that individuals satisfactorily complete an approved municipal police basic training program prior to appointment as a police officer on a permanent basis. A certificate of completion issued upon completion of an approved training course remains valid, as relevant here, during the holder's continuous service as a police officer and during certain specified periods of "interruption" from service (General Municipal Law § 209–q[1][b]). Interruption means separation from employment as a police officer "by reason of such officer's leave of absence, resignation or removal, other than removal for cause" (General Municipal Law § 209–q[1][c]). Respondent Division of Criminal Justice Services (hereinafter DCJS) is charged with maintaining a registry of all police officers in the state, which includes information regarding completion of the required training course (see Executive Law § 845[1]). All agencies employing police officers are required to immediately report to DCJS when any officer it has employed ceases to serve (see Executive Law § 845[2]). DCJS is authorized to adopt such regulations as may be necessary or convenient to the performance of its duties (see Executive Law § 837[13]). In October 2016, DCJS promulgated regulations defining the term "removal for cause" and requiring that an agency employing police officers immediately notify DCJS when a police officer it has employed ceases to serve and the reason for change in employment status. The regulations were amended in February 2017 to revise the definition of removal for

6

cause. Under either definition, removal for cause includes, as relevant here, resignation while a disciplinary proceeding is pending against the officer pursuant to Civil Service Law § 75.

Aufiero v. NYS DCJS, 173 A.D.3d 1320, 1320, 103 N.Y.S.3d 610, 611 (3d Dept. 2019).[3] In addition to the foregoing statutes, NY Executive Law § 845(4) provides that when the employer fails to comply with its reporting requirements under § 845(2), DCJS may apply to the State supreme court for an order compelling compliance.

There have been amendments to the statutes since Aufiero was decided in 2019. Most pertinent here, effective October 16, 2021, the State Legislature enacted the Professional Policing Act of 2021, which, among other things, amended NY Executive Law § 845 to create subsection (3)(b), which permits DCJS to resolve issues of material inaccuracies in the notification received by it of the reasons for an officer's separation of service, by informal means, and, if necessary, a hearing upon notice to the police department and the officer. Sessions Laws of N.Y. 2021, ch 59, Part BBB §§ 10, 18. The Act also added subsection (1)(b-1) to NY General Municipal Law § 209-q, which provides that a certificate may be permanently invalidated upon an officer's removal for cause. See Part BBB § 14; Kitto v. City of Albany, 213 A.D.3d 1165, 1170, 185 N.Y.S.3d 343, 348-49 (3d Dept. 2023).

DCJS has promulgated regulations pursuant to the foregoing statutory authority. Promulgating regulations "are quasi-legislative acts, having the effect of law." Stevens v. NYS DCJS, 206 A.D.3d 88, 92, 169 N.Y.S.3d 1, 5 (1st Dept. 2022). Under the regulations, employers are required to report when police officers cease to serve and the reason for such. 9 NYCRR §

---

[3] The certification provision applies to all police and peace officers in New York State, not only those covered by NY General Municipal Law § 209-q. See NY Executive Law § 845(1). Section 209-q is the provision applicable to Plaintiff's position as a Town of Fishkill Police Sergeant.

6056.4(c) (eff. Apr. 12, 2017), now § 6056.4(d).[4]  At the time Plaintiff was decertified, cessation of service other than for cause or during a probationary period was deemed an interruption that entitled the officer to remain certified for a finite period. 9 NYCRR § 6056.4(c) (eff. Apr. 12, 2017); NY General Municipal Law § 209-q(1)(b).  Removal for cause was defined as removal for incompetence or misconduct pursuant to a disciplinary hearing under NY Civil Service Law §§ 75 or 76, a collective bargaining agreement or pursuant to "any other applicable law," and also included "resignation or retirement while a disciplinary proceeding has commenced" that might result in removal, or "waiver of any rights" available pursuant to the foregoing processes that might result in removal.  9 NYCRR § 6056.2(g) (eff. Apr. 12, 2017).  The regulations have since been rewritten to now define removal for cause as a type of interruption in connection with allegations of misconduct, which is now defined.  9 NYCRR § 6056.2(h).  Then and now, removal for cause results in invalidation of the certification.  NY General Municipal Law § 209-q(1)(b-1).[5]

The employing agency has the duty to report an officer's end of service and the reason for it, including removal for cause.  9 NYCRR § 6056.4(c) (eff. Apr. 12, 2017), now § 6056.4(d); § 6056.5.  Officers whose names are excluded or removed from the registry (i.e. decertified), may request an opportunity to review the information in the possession of DCJS on which the determination was based.  An officer may thereafter present "to the employer" any argument on the law and facts and the employer may resubmit the officer's name for registration "along with a

---

[4] The regulations now in effect were originally promulgated as a series of emergency regulations after enactment of the aforementioned Professional Policing Act of 2021 and first effective on October 16, 2021, and culminated in the current permanent regulations, which were effective on November 2, 2022.  See 9 NYCRR § 6056.1 et seq. (credits).

[5] Prior to the creation of §209-q(1)(b-1) by the Professional Policing Act of 2021, the invalidation of the certification was by the negative implication of subsection (c), which excludes removal for cause from the definition of interruption, which provided for extension of the validity of the certificate after departure from service.

statement of the reasons establishing such person's eligibility to be a police or peace officer." 9 NYCRR § 6056.7 (eff. Oct. 26, 2016), now § 6056.8.

Pursuant to the new requirements of the Professional Policing Act of 2021, a new 9 NYCRR § 6056.7 was created to provide a procedure to address issues concerning the accuracy of information on which certification status is based. When it shall appear to the Commissioner of DCJS or a designee that there is a material inaccuracy in the employer's reporting of the reason an officer ceased to serve, DCJS shall attempt to resolve the perceived inaccuracy. If that attempt does not promptly resolve the discrepancy, DCJS shall issue a notice to the employer and the officer of its intent to amend the inaccuracy of the record. Either the employer or the officer may request a hearing before the Municipal Police Training Council (NY Executive Law §§ 839 et seq.), following which the Council submits its recommendation to the Commissioner of DCJS, who makes the final decision.

### III.    PLAINTIFF WAS NOT DEPRIVED OF A PROPERTY INTEREST WITHOUT DUE PROCESS BY ANY OFFICIAL OF DCJS

#### A.    The Balance Of Pertinent Interests Favors Defendants

As explained by the Second Circuit,

> Our analysis of procedural-due-process claims ordinarily proceeds in two steps. First, we ask "whether there exists a ... property interest of which a person has been deprived." Swarthout v. Cooke, —— U.S. ——, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). If so, we then "ask whether the procedures followed by the State were constitutionally sufficient." Id.; accord, e.g., Adams v. Suozzi, 517 F.3d 124, 127 (2d Cir.2008).

Oneida Indian Nation v. Madison County, 665 F.3d 408, 427-28 (2d Cir. 2011).

In this case, although Defendants assume, for the purpose of this motion only, that Plaintiff has sufficiently identified a property interest in continued certification as a police officer, we disagree that the property interest at stake here is in continued employment. Plaintiff quit his job;

the only property interest is in the portability of his certification as a police officer, the loss of which does not equate with loss of a job or demotion.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Courts consider the following factors to determine the adequacy of the challenged procedures:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Considering Plaintiff's interest in continued certification, although pursuing a particular livelihood has been held to be a strong interest, see Spinelli v. City of New York, 579 F.3d 160, 171 (2d Cir. 2009), whatever the effect of New York's statutory and regulatory scheme on the creation of a property interest, the intent of the scheme was not to give police or peace officers a right to freely move from one law enforcement position to another. Rather, certification is tied to good standing with the employing agency, and the officer must be decertified upon removal for cause, which includes not only termination following a disciplinary hearing, but also resignation while under the cloud of pending proceedings. See NY General Municipal Law § 209-q(1)(c); 9 NYCRR § 6056.2(g) (eff. Apr. 12, 2017), now § 6056.2(h).

Further, Plaintiff's interest in continued certification is not unlimited. Non-probationary officers who leave employment for a reason other than removal for cause are entitled to maintain their certification for a finite term of up to four years. NY General Municipal Law § 209-q(1)(b). Conversely, under the law in place at the time of Plaintiff's decertification, an officer whose certificate was invalidated upon removal for cause was not barred from being hired in a

10

probationary position and requalifying (recertification).  See 9 NYCRR § 6020.7.[6]  Certification

is not the equivalent of licensing, but  merely signifies that officers have "satisfactorily complete[d]

an approved municipal police basic training program."    Aufiero, 173 A.D.3d at 1320, 103

N.Y.S.3d at 611 (citing NY General Municipal Law § 209–q(1)(a)).    Examination is the local

responsibility of employing agencies or the numerous authorized police academies.  See 9 NYCRR

§§ 6020.1 et seq.  New York has not enacted a licensing requirement for police officers.  See  Note,

Matthew Hanner, 55 Columbia Journal of Law and Social Problems 57, 95 (Fall 2021) (noting a

proposed licensing scheme that has not been enacted).  In any event, New York's statutory and

regulatory scheme ties officers' interests in continuing certification with their employers'

assessment of their continued qualification.

    Moreover, the strength of an officer's private interest must be considered in relation to the

claim against officials of DCJS.  As noted above, at the time of all incidents alleged here, officers

could only be deemed removed for cause and subject to invalidation of their certification following

a due process disciplinary hearing or resignation "while a disciplinary process had commenced."

9 NYCRR § 6056.2(g) (eff. Apr. 12, 2017).  The duty to report this removal for cause lies with the

employing agency.  NY Executive Law § 845(2)(a).  DCJS has no role in this determination and,

indeed, "DCJS, acting on its own initiative, lack[s] the authority to determine [an officer's] peace

[or police] officer status."  People v. Ferrara, 128 Misc.2d 687, 688, 490 N.Y.S.2d 462, 463 (Sup.

Ct. Richmond Cty. 1985).[7]  Moreover, officers may seek judicial review against their erstwhile

---

[6] The Professional Policing Act of 2021 included a new provision for the permanent invalidation
of a certificate.  See NY General Municipal Law § 209-q(1)(b-1).  However, this provision is not
retroactive for the same reasons discussed below regarding the new procedure for correcting
inaccuracies in the employer's reporting.  In any event, Plaintiff does not allege that he has been
disqualified from requalifying.

[7] In Ferrara, the court dismissed an indictment on two counts of criminal possession of firearms
against a peace officer after determining that he was unlawfully decertified by DCJS on its own

11

employers not only of the determination of disciplinary proceedings, but may also bring proceedings under NY CPLR Article 78 to review employers' reports that removal was for cause on an arbitrary and capricious standard. See Kitto, 213 A.D.3d at 1171, 185 N.Y.S.3d at 349.[8]  In sum, whatever interest the officer has in continued certification is protected by claims against the employer.

"As for the second [Mathews] factor, the risk of erroneous deprivation and the probable value of additional procedures, courts consider both the significance of the pre- and postdeprivation process." Schneider v. Chandler, No. 16cv6560 (DLC), 2018 WL 770395, *5 (S.D.N.Y. Feb. 7, 2018) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 n.12 (1985)). To the extent that the removal for cause is the product of a disciplinary hearing, those not only undoubtably afford due process, but are subject to judicial review. Providing a separate procedure for decertification would be duplicative and wasteful. See Dixon v. Love, 431 U.S. 105, 113-15 (1977) (upholding state's scheme of driver's license revocations automatically upon multiple traffic convictions subject to administrative appeal). Because due process rights may be waived, see Boddie v. Connecticut, 401 U.S. 371, 378-79 (1971), resignation to avoid the consequences of a disciplinary hearing also does not justify a separate hearing on decertification. Moreover, as noted, employer reports that an officer resigned while disciplinary proceedings were pending is subject to judicial review under NY CPLR Article 78, See Kitto, 213 A.D.3d at 1171,

---

initiative after receiving information that he no longer was a peace officer. "The mandate given to the DCJS through the enactment of Executive Law Sections 845 and 845–a was to maintain a registry of peace officers, not to make unilateral determinations of the status of those whose names are provided to it by the agencies contained in Section 845–a, subd. 2." Ferrara, 128 Misc.2d at 689, 490 N.Y.S.2d at 464. Sometime after Ferrara was decided, § 845, governing police officers, and § 845-a, governing peace officers, were combined.

[8] In Kitto, the Appellate Division determined that it was error to dismiss an Article 78 petition challenging an employer's determination that the petitioner resigned while disciplinary proceedings were pending because factual issues existed.

185 N.Y.S.3d at 349, which is "a wholly adequate post-deprivation hearing for due process purposes. . . ." Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001).

Moreover, the officer has additional protections. Pursuant to 9 NYCRR § 6056.7(a) (eff. Oct. 26, 2016), now § 6056.8(a), any person not accepted for certification or who is decertified "shall, on request, be provided the opportunity to review all information in possession of [DCJS] on which such determination was based," subject to conditions not material here. Thereafter, that person "may present argument on issues of law and fact to the employer," which "may then resubmit such person's name for registration, along with a statement of reasons establishing such person's eligibility to be a police or peace officer." Id. Significantly, the regulation does not provide for a direct application by the officer to DCJS to reconsider decertification, but requires the officer's name to be resubmitted for certification by the employing agency. See Ferrara, 128 Misc.2d at 688, 490 N.Y.S.2d at 463. Any objections the officer may have either to DCJS providing the information in its possession, the employer's action, or the DCJS treatment of any request to resubmit for certification would be subject to judicial review under NY CPLR Article 78. See Kitto, 213 A.D.3d at 1171, 185 N.Y.S.3d at 349. In sum, even prior to enactment of the Professional Policing Act of 2021, there were substantial safeguards in place to ensure against errors in the decertification process.

The Professional Policing Act of 2021 added to these safeguards. Newly created NY Executive Law § 845(3)(b), which permits DCJS to resolve issues of material inaccuracies in the employer reported reasons for an officer's separation of service, initially by informal means, and, if necessary, a hearing upon notice to the police department and the officer. Under the regulations promulgated by DCJS, any hearings are held before the Municipal Police Training Council, which makes recommendations to the Commissioner of DCJS, who makes the final decision. See current

13

9 NYCRR § 6056.7.  Any final decision is subject to judicial review under NY CPLR Article 78.

The third <u>Mathews</u> factor considers the government's interest, which "includes both the cost to the government of providing additional procedures and the interest motivating the property deprivation itself."  <u>Schneider</u>, 2018 WL 770395 at *5 (citing <u>Mathews</u>, 424 U.S. at 335). "One important government interest, for instance, is promoting public safety."  <u>Schneider</u>, <u>supra</u> (citing <u>Ferrari v. Cty. of Suffolk</u>, 845 F.3d 46, 60-62 (2d Cir. 2016)).  Here, the State of New York obviously has a paramount interest in the quality of its law enforcement officers.  In <u>Locurto</u>, 264 F.3d at 174-75, the Second Circuit held that the comprehensive review before a neutral judge under Article 78 satisfied due process requirements notwithstanding alleged shortcomings in pretermination proceedings.  "We fully agree with the view that the costs to the state of additional pre-deprivation guarantees (in this case, a neutral adjudicator) outweigh possible benefits to the employee, given the availability of a full post-deprivation hearing."  <u>Id.</u> at 174.

In sum, the balance of interests weighs heavily in favor of Defendants' position that due process is provided.  Plaintiff's property interest, assuming there is one, is limited.  Petitioner's interest here is not in continued employment; it is in the portability of his certification without requalifying.  New York's interest is great, both in ensuring the quality of law enforcement officers and in avoiding costs in providing unnecessary administrative proceedings considering the availability of review by the employer for determinations and reports made by such employer, and considering the availability of review under Article 78 for the actions of the employer and DCJS.  Moreover, the Article 78 proceedings are an additional safeguard for the administrative proceedings available to ensure correct decisions.

**B.    The Allegations Fail To Show That Plaintiff Was Denied Due Process**

Considering that the above balance already weighs heavily against Plaintiff, the facts

14

alleged in the Complaint fail to show a violation of Plaintiff's due process rights.  Plaintiff alleges

that then Town of Fishkill Police Chief Schepperly commenced an investigation of Plaintiff, which

contributed to Plaintiff's resignation effective December 4, 2019.  Cmpt ¶¶ 9, 11, 13.  Chief

Schepperly reported Plaintiff's resignation as "for cause," resulting in Plaintiff's decertification

under NY Executive Law § 845.  Cmpt ¶ 15.  Plaintiff learned of the decertification in January

2020.  Cmpt ¶ 16.

Plaintiff's allegation that he actually resigned in "good standing" is a conclusion of law.

Cmpt ¶ 14.  Plaintiff alleges no facts regarding the alleged protected speech that motivated Chief

Schepperly's alleged reprisal, the subject matter and the status of the ensuing investigation, and

the circumstances that purportedly motivated Plaintiff's resignation.  Cmpt ¶¶ 9-12.  More

significant, however, is Plaintiff's failure to allege any facts whatsoever to reflect that any

Defendant, or DCJS as a whole, was aware of any irregularity in the reporting of his resignation

until several months later.  "[T]he doctrine of presumption of administrative regularity 'provides

that, in the absence of clear evidence to the contrary, the court will presume that public officers

have properly discharged their official duties.'"  Otero v. Comm. of Social Security, No. 12–CV–

1434 (WFK)(RLM), 2013 WL 1934074, *5 (E.D.N.Y. May 8, 2013) (quoting Miley v. Principi,

366 F.3d 1343, 1347 (Fed.Cir.2004)).  Administrative agencies are entitled to rely on the same

presumption.  Nothing alleged in the Complaint suggests that Defendants were presented with any

issue with respect to Chief Schepperly's reporting to DCJS at the time of the reporting and for

several months thereafter.

According to the Complaint, notwithstanding that Plaintiff was notified of the

decertification in January 2020, the first report received by Defendants of any potential irregularity

in Chief Schepperly's report that Plaintiff resigned for cause came in April 2020, four months after

Plaintiff resigned.  Cmpt ¶¶ 16, 19.  Plaintiff does not allege that he availed himself of the available Article 78 proceeding to dispute the accuracy of Chief Schepperly's report.  See Kitto, 213 A.D.3d at 1171, 185 N.Y.S.3d at 349.

In April 2020, the Town of Fishkill's new Police Commissioner requested that Plaintiff be recertified on the grounds that he had left Town service in good standing and there was no basis to decertify him.  Cmpt ¶¶ 19-20.  Defendants rejected the request because it did not come from the Police Chief.  Cmpt ¶ 21  Months after that, in Summer 2020, the Town Board (supported by the Town Supervisor) passed a resolution to request Plaintiff's recertification, which was conveyed to Defendants by the Town Attorney and rejected.  Cmpt ¶¶ 25-26.

Plaintiff's contention that Defendants erroneously rejected the requests are conclusions of law that are not entitled to the assumption of truth.  See Iqbal, 556 U.S. at 678.  Moreover, the contention is a conclusion of New York law, which is not germane to the due process inquiry. DCJS regulations require that changes in employment status to be made by the officer's employer. 9 NYCRR § 6056.4(c) (eff. Apr. 12, 2017), now § 6056.4(d).  "Employer means the chief executive officer of any State or local agency, unit of local government, State or local commission, public authority, or organization which employs police officers or peace officers."  9 NYCRR § 6056.2(c) (eff. Apr. 12, 2017), now § 6056.2(d).  Agencies act through their officials and it is reasonable for DCJS to designate a single official as speaking for the employing agency to avoid confusion and conflicting positions.  Plaintiff alleges that after Chief Schepperly resigned, his replacement, Chief Dworkin, refused to support the movement to recertify Plaintiff, so the need to determine which single voice spoke for the Town of Fishkill Police Department was important in this case.  See Cmpt ¶¶ 17-18.  Moreover, there is no allegation that recertification was sought for the purpose of reinstating Plaintiff's employment, raising additional questions about the reasons

16

for the requests to recertify.[9]  Plaintiff's assertion that Defendants designated the wrong official as authorized to speak for the employer is conclusory.

Determining who spoke for Plaintiff's employer is a matter of State law, which does not implicate Federal due process principles.  Failure to comply with a State regulation, "does not violate plaintiff's federal constitutional rights.  'An individual's right to have the relevant state laws strictly obeyed is not a federal right protected by the Civil Rights Act of 1871 or the Constitution of the United States.'"  Smith v. O'Connor, 901 F.Supp. 644, 647-48 (S.D.N.Y. 1995) (Sotomayor, DJ)(citation omitted).  DCJS's determination that only the Police Chief is authorized to speak for the Town of Fishkill Police Department was not arbitrary, capricious, unreasonable or biased.  In any event, Plaintiff could have brought an Article 78 proceeding to compel DCJS to accept the requested recertification.  See NY CPLR §§ 7801, 7803.  He did not do so.  "[F]ailure to submit to [available] procedures precludes consideration of the fairness of those proceedings in practice."  Narumanchi v. Board of Trustees of Connecticut State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

Plaintiff also failed to avail himself of the administrative procedure then in place to correct inaccuracies in the certification registry.  Specifically, as noted, under 9 NYCRR § 6056.7 (eff. Oct. 26, 2016), now § 6056.8, officers who were decertified were, "on request," "provided the opportunity to review all information in the possession of the division [DCJS] on which such determination was based. . . ."  Thereafter the officers were permitted to "present argument on issues of law and fact to the employer.  The employer may than resubmit such person's name for registration, along with a statement of the reasons establishing such person's eligibility to be a police or peace officer."  Id.  Plaintiff contends that Defendants never communicated with him, for

---

[9] Plaintiff has suggested, but not pleaded, that he was not reinstated because he was not certified. However, there is a no allegation suggesting that he would have been reinstated if he was recertified.

example, to let him know that Chief Schepperly continued to correspond with them. Cmpt ¶¶ 23-24, 27. However, Plaintiff could have requested all information in DCJS's records. Plaintiff contends that the correspondence from the Town of Fishkill Police Commissioner and Town Board satisfied the procedure provided by the regulation, but the regulation requires that the procedure be initiated by a request for information from the aggrieved officer and, as discussed, the officials who corresponded with Defendants were deemed not to be the employer within the meaning of 9 NYCRR § 6056.2(c) (eff. Apr. 12, 2017), now § 6056.2(d). Insisting that the review process begin with a request from the aggrieved officer and that the request to recertify come from the proper official is not unreasonable. Administrative agencies are entitled to compliance with their reasonable procedural rules. See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006)("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").[10] In any event, once again, Plaintiff could have brought an Article 78 proceeding seeking to compel DCJS to accept the correspondence from Town officials other than the Police Chief as the statement of reasons required by 9 NYCRR § 6056.7 (eff. Oct. 26, 2016), now § 6056.8.

In sum, Plaintiff's limited property interest, if any, in the portability of his certification as a police officer to other employment was well protected by the administrative and judicial

---

[10] Woodford required compliance with administrative rules for the purpose of exhausting available administrative remedies under the Prison Litigation Reform Act. See 42 U.S.C. § 1997e(a). This case does not involve the affirmative defense of exhaustion, but the availability of administrative and judicial remedies that Plaintiff did not pursue undermines his due process claims. See Narumanchi, 850 F.2d at 72 ("Judge Dorsey did not dismiss Narumanchi's due process claim as a threshold matter on 'exhaustion of remedies' grounds. Rather, after properly determining that SCSU's decision to suspend Narumanchi without pay implicated a protected property interest . . ., the Judge found that the grievance procedures contained in the Agreement provided whatever process Narumanchi was due as a matter of federal law")(citations omitted).

procedures available to him.  Plaintiff's failure to pursue these remedies is fatal to his claim that

he was denied due process in decertifying him.

**C.**     **The Procedure That Plaintiff Seeks To Compel Is Already In Place, But Does Not Apply Retroactively To Him**

Plaintiff's demand for an injunction to order Defendants to create a new due process

procedure for decertified officers generally is a non-starter because it already exists.  However,

Plaintiff himself is ineligible for the new procedure, which should not be applied retroactively.

Effective October 16, 2021, the Professional Policing Act of 2021 created NY Executive

Law § 845(3)(b), which permits DCJS to resolve material inaccuracies in notification received by

it of the reasons for an officer's separation of service, either informally or, if necessary, a hearing

upon notice. Sessions Laws of N.Y. 2021, ch 59, Part BBB §§ 10, 18.  The rules promulgated by

DCJS under the new law provide for a full evidentiary hearing (see NY Administrative Procedure

Act §§ 301 et seq.) before the Municipal Police Training Council on notice to and application by

either the officer or the employer.  The Council makes recommendations, but the Commissioner

makes the final decision.  9 NYCRR § 6056.7 (permanent rules eff. Nov. 2, 2022).

The new statute and regulations provide for new rights that did not previously exist,

specifically a determination by the Commissioner of DCJS, upon an evidentiary hearing, that the

employer's report of the reasons for an officer's departure from service as a police officer should

be corrected, thereby altering that report's impact on the validity of the officer's certification.[11]

Prior to the new law, as discussed, DCJS had no authority to alter certifications and the procedure

in place left reconsideration to the employing agency.  See Ferrara, 128 Misc.2d at 688, 490

N.Y.S.2d at 463; 9 NYCRR § 6056.7 (eff. Oct. 26, 2016), now § 6056.8.  Plaintiff's contention in

---

[11] The new statute and rules operate both ways, and may result in decertification where it is determined that the employer's report that a departure from service was not for cause was in error.

his premotion letter that the new procedure does not provide for adequate safeguards is conclusory and erroneous.

The new procedure, however, does not apply retroactively to cover Plaintiff's decertification. Plaintiff was decertified in December 2019 and no fact alleged in the Complaint occurred after August 2020, more than a year prior to the effective date of the Professional Policing Act of 2021. Under New York law, in the absence of clear legislative intent to the contrary,

> an amendment to a statute will generally not be applied retroactively where, as here, it "affects the rights of the parties and 'bestows a new right' " (People v. George, 199 A.D.3d 831, 832, 154 N.Y.S.3d 269 [2d Dept. 2021], lv denied 38 N.Y.3d 927, 164 N.Y.S.3d 24, 184 N.E.3d 845 [2022]), inasmuch as "[e]ven remedial statutes are applied prospectively where they establish new rights" (State of New York v. Daicel Chem. Indus., Ltd., 42 A.D.3d 301, 302, 840 N.Y.S.2d 8 [1st Dept. 2007]; see Aguaiza v. Vantage Props., LLC, 69 A.D.3d 422, 424, 893 N.Y.S.2d 19 [1st Dept. 2010]).

Peo. ex rel. Griffin v. Baxter, 208 A.D.3d 986, 987-88, 173 N.Y.S.3d 87, 90 (4th Dept. 2022). See Peo. ex rel. Britt v. Harder, 211 A.D.3d 1289, 1292, 180 N.Y.S.3d 374, 377 (3d Dept. 2022) (rejecting retroactive application of statutory amendments limiting reincarceration of parolees for merely technical violations of conditions of release in the absence of clear legislative intent). These principles are similar to those applied by Federal courts in determining the retroactivity of Federal statutes. See Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994). Here, whereas direct judicial review of the employer's determination under Article 78 is governed by an arbitrary and capricious standard, see Kitto, 213 A.D.3d at 1171, 185 N.Y.S.3d at 349, the new procedure does not require deference to the employer and provides for closer scrutiny of its actions.

As Defendants have already demonstrated that the procedures already in place adequately safeguarded Plaintiff's federal constitutional rights, there is no justification to compel retroactive application of the new proceeding to him. Moreover, the Complaint does not seek retroactive application of the new proceeding to Plaintiff and has waived the opportunity to amend the

Complaint.  <u>See</u> electronic minute entry of conference of July 21, 2023.  Plaintiff does not allege

that he has ever asked DCJS to apply the new procedure to him.  Any contention that doing so

would be futile again disregards the availability of judicial review of DCJS's interpretation of the

new law in a proceeding under Article 78.  Accordingly, Plaintiff is ineligible for a proceeding

under NY Executive Law § 845(3)(b).

### IV.  MOST OF THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL FOR ADDITIONAL SEPARATE AND INDEPENDENT REASONS

### A.  Prospective Relief Cannot Be Awarded Beyond A Defendant's Official Capacity To Carry It Out

Initially, Plaintiff's claims for declaratory and injunctive relief fail because the Complaint

fails to allege the law that he seeks to have declared unconstitutional and enjoin.  <u>See</u> Cmpt ¶¶ 39-

40 and Prayer for Relief.

At any rate, where, as here, injunctive relief is sought against a government official in the

exercise of official policies, the official must have the "the official capacity necessary to enable

him to comply with the injunctive relief sought."  <u>Blackburn v. Goodwin</u>, 608 F.2d 919, 925 (2d

Cir. 1979).  Declaratory relief also requires that an official have the requisite legal status.  <u>See</u> <u>id.</u>

Two consequences flow from these principles.

First, injunctive relief to compel or forbid official conduct cannot be awarded against

Defendants in their individual capacities.

> "[I]injunctive relief against a state official may be recovered only in an official capacity suit," <u>Hill v. Shelander</u>, 924 F.2d 1370, 1374 (7th Cir. 1991), because "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." <u>Kentucky v. Graham</u>, 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

<u>Marsh v. Kirschner</u>, 31 F.Supp.2d 79, 80 (D. Conn. 1998).  <u>Accord</u> <u>Correction Officers Benev.</u>

<u>Ass'n v. Kralik</u>, No. 04 Civ. 2199 (PGG), 2009 WL 856395, *8 n. 7 (S.D.N.Y. Mar. 26, 2009).

"Claims for prospective relief [e.g., injunctive or declaratory relief] against a state officer may be asserted only against the officer in [his or] her official capacity." Arzuaga v. Quiros, No. 3:10CV1200 (DJS), 2016 WL 8199306, *2 (D. Conn. Feb. 18, 2016) (quoting Poe v. Massey, 3 F.Supp.2d 176, 178 (D. Conn. 1998) (brackets in Arzuaga)). "The injunctive relief that plaintiff requests . . . requires state action, and therefore cannot be pursued against any of the remaining defendants in their individual capacities." Stallworth v. New York, No. 16-CV-03059 (PAE) (BCM), 2017 WL 4355897, *8 n. 6 (S.D.N.Y. Jul. 27, 2017), R&R adopted, 2017 WL 4342148 (S.D.N.Y. Sep. 28, 2017). Here, Plaintiff sues Defendants Russell and Mahany in both their individual and official capacities. Cmpt ¶¶ 3-4. Declaratory and injunctive relief directed at their official duties may not be awarded against them in their individual capacities.

The second consequence that flows from the holding of Blackburn is that, even to the extent that Plaintiff seeks prospective relief in Defendants' official capacities, "the official must have the 'the official capacity necessary to enable him to comply with the injunctive relief sought.'" Blackburn, 608 F.2d at 925. Here, the Complaint merely alleges that Defendants Russell and Mahany are employees of DCJS. Cmpt ¶¶ 3-4. There are no allegations that they have the authority to make policies and direct others to carry them out. Although Commissioner Rosado has the official capacity incumbent with her position of Commissioner of DCJS, as discussed previously, DCJS has no independent authority to determine certification issues. To the extent that the enactment of NY Executive Law § 845(3)(b) by the Professional Policing Act of 2021 creates the authority to determine certification issues, such authority is not retroactive for the reasons previously discussed. To the extent that Plaintiff purports to seek what is effectively class wide prospective relief, such relief is unnecessary because the new statute and regulation already address every issue Plaintiff raises.

**B.       Damages Are Unavailable**

The Court lacks jurisdiction to entertain damage claims against Defendants in their official capacities because they are not persons subject to suit within the meaning of 42 U.S.C. § 1983 to overcome New York's sovereign immunity.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  As Commissioner Rosado is sued only in her official capacity, Cmpt ¶ 2, all damage claims against her must be dismissed.

As for the individual capacity damage claims against Defendants Russell and Mahany, Plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.  Plaintiff fails to do this. The Complaint simply lumps the Defendants together as if all of them acted collectively, which is contrary to Iqbal's requirement of individual liability.

Even if it is assumed that Defendants Russell and Mahany are the DCJS employees who sent and received correspondence, at most, and that generously, nothing alleged suggests that Defendants Russell and Mahany acted inconsistently with established DCJS policies, policies they are not alleged to have created.  Even to the extent that Plaintiff shows that any law was violated, Plaintiff's failure to pursue available Article 78 remedies also defeats his claims for damages.

In any event, Defendants Russell and Mahany have qualified immunity.  Qualified immunity shields government officials from suits for damages arising from performance of their discretionary functions when, applying an objective standard, "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "[C]onduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right are sufficiently clear'

23

that 'every reasonable official would [have understood] that what he is doing violates that right.'"

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citation omitted, brackets in original).   The

Supreme Court instructs "not to define clearly established law at a high level of generality."  Id.,

563 U.S. at 742.  Qualified immunity is also available, despite the clear delineation of the rights,

"if it was objectively reasonable for [a defendant] to believe that his acts did not violate those

rights."  Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987).  Qualified immunity also requires that

Plaintiff's theory of Defendants' personal involvement in the claims against them be clearly

established law.  See Poe v. Leonard, 282 F.3d 123, 134 (2d Cir. 2002).

Here, however clearly established Plaintiff's property interest may be (an issue not

conceded, but not argued here), the law is by no means clearly established as to the process due to

protect that property interest.  As of this date, it appears to us that only two Federal decisions in

Westlaw even cite NY Executive Law § 845, and both involve claims against the employers, not

DCJS officials.  See Moulton v. County of Tioga, No. 3:22-cv-00340 (AMN/ML), 2023 WL

4627646 (N.D.N.Y. Jul. 19, 2023); Comerford v. Village of North Syracuse, No. 5:18-cv-01143

(BKS/TWD), 2021 WL 950974 (N.D.N.Y. Mar. 12, 2021). [12] Outside of New York, reported cases

of which Defendants are aware are scant.  Stidham v. Peace Officer Standards and Training, 265

F.3d 1144, 1150 (10th Cir.2001), held that there was a protected property interest in continued

certification, but is not helpful here on the issue of the process due because the allegation was not

that the Plaintiff was decertified, but that the agency employees disseminated false information

thus constructively decertifying him, which is not what Plaintiff alleges here.  In Durham v. Rapp,

---

[12] A third Federal decision involves the claims of a nursing home employee and the reference to
Executive Law § 845 appears to be a typographical error intending to refer to Executive Law §
845-b, which involves requests for criminal history information.  See Walker v. Daines, No. 08–
CV–4861 (JG)(LB), 2009 WL 2182387, *3 (E.D.N.Y. Jul. 21, 2009).

64 F.Supp.3d 740, 748-50 (D. Md. 2014), a district court dismissed a due process claim challenging a decertification that was automatic with termination of employment and a claim that the decertification was not vacated after the termination was reversed, but did not result in reinstatement of employment, but held that a claim was stated when the agency defendants did not vacate the decertification after the plaintiff returned to employment.  This case is most like the dismissed claim as Plaintiff was not returned to employment.  As to the claim that was not dismissed, there was no discussion of a post-deprivation remedy comparable to an Article 78 proceeding.  In any event, as a district court decision addressing a claim involving another State's police certification statute, Durham does not clearly establish the law for qualified immunity purposes.  See Richardson v. Selsky, 5 F.3d 616, 623 (2d Cir. 1993)("a district court decision does not 'clearly establish' the law, even in its own circuit").  There may be other cases, but the law is not clearly established with the required specificity to overcome qualified immunity.    See al-Kidd, 563 U.S. at 742.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that their Motion to Dismiss be granted and that the Complaint and the Action be dismissed.

Dated: New York, New York                    Respectfully submitted,
      September 14, 2023                    LETITIA JAMES
                                      Attorney General of the
                                           State of New York
                                     Attorney for Defendants
                                     By:

                                     /s/ Steven N. Schulman
                                     STEVEN N. SCHULMAN
                                     Assistant Attorney General
                                     28 Liberty Street-18th Floor
STEVEN N. SCHULMAN                   New York, New York 10005
Assistant Attorney General               (212) 416-8654
    of Counsel                           steven.schulman@ag.ny.gov

25