UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SCOTT BIERCE,

                                    Plaintiff,

                                                                    **OPINION & ORDER**

        - against -

                                                                    No. 23-CV-2375 (CS)
ROSSANA ROSADO, in her official capacity as
Commissioner, New York State Division of
Criminal Justice Services,

                                    Defendant.
-------------------------------------------------------------x

Appearances:

Michael H. Sussman
Sussman & Associates
Goshen, New York
*Counsel for Plaintiff*

Steven N. Schulman
Assistant Attorney General
Office of the Attorney General of New York State
New York, New York
*Counsel for Defendant*

Seibel, J.

        Before the Court is the motion of Defendant Rossana Rosado to dismiss the case as moot.

(ECF No. 50.)  For the following reasons, the motion is GRANTED.

I.      **BACKGROUND**

        For purposes of the motion, the Court accepts as true the facts set forth in the Complaint,

to the extent uncontradicted by evidence in the record, (ECF No. 1 ("Compl.")).  *See Walker v.*

*N.Y. State Dep't of Health*, 788 F. Supp. 3d 427, 453 (E.D.N.Y. 2025); *Li v. Napolitano*, No. 08-

CV-7353, 2009 WL 2358621, at *1 (S.D.N.Y. July 30, 2009).  Because mootness is a

jurisdictional question, I also draw facts from the parties' submissions, such as the declarations

and accompanying exhibits.  *See Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *J.L. ex rel. J.P. v. N.Y.C. Dep't of Educ.*, 324 F. Supp. 3d 455, 466 n.3 (S.D.N.Y. 2018).

### A.    Facts

Plaintiff Scott Bierce was a certified police officer in New York State for over thirty-five years and served as a municipal police officer for the Town of Fishkill (the "Town") Police Department (the "Police Department") for most of that time.  (Compl. ¶¶ 1, 6-7.)  Defendant Rossana Rosado is the Commissioner of the New York State Division of Criminal Justice Services ("DCJS") and is sued in her official capacity.  (*Id.* ¶ 2.)

In early 2019, the Town's then-police chief, James Schepperly, took actions against Plaintiff, including commencing an investigation against him, allegedly in retaliation for his protected speech.  (*Id.* ¶¶ 9-10.)  On or about December 2, 2019, Plaintiff resigned from his position with the Police Department due to "the unpleasant terms and conditions of his employment, which he attributed to Schepperly's retaliatory animus."  (*Id.* ¶ 11.)  Plaintiff alleges that, at the time of his resignation, neither Schepperly nor anyone under his command had interviewed him in connection with any investigation, nor had Schepperly brought disciplinary charges against him.  (*Id.* ¶ 12.)

Plaintiff's cessation of employment was originally reported to DCJS as a standard retirement or resignation on the Acadis Registry, an online management system used by law enforcement agencies throughout the United States.  (ECF No. 53 ("Russell Decl.") ¶¶ 6, 8.)  On December 16, 2019, Joyce Montague, the Acadis designee for the Police Department, requested that Plaintiff's status be changed to reflect a removal for cause.  (*Id.* ¶ 9 & Ex. C.)  Schepperly subsequently confirmed that status, explaining that Plaintiff was suspended with pay on October 28, 2019, based on an investigation that revealed misconduct, but that service of formal charges

had been delayed due to the unavailability of Plaintiff's counsel.  (*Id.* ¶ 11 & Ex. E.)  On January 22, 2020, DCJS informed Plaintiff by letter that it had been notified that he had been removed for cause and that as a result, his police officer basic training certification was invalidated pursuant to state regulation.  (*Id.* ¶ 12 & Ex. F; Compl. ¶ 16.)  Around the same time, a new Town Supervisor was elected and, with the support of a majority of the Town Board, he appointed a new Police Commissioner, Dennis Zack.  (Compl. ¶ 16.; Russell Decl. ¶ 14.)

In February 2020, Schepperly resigned as police chief and was replaced by Keith Dworkin.  (Compl. ¶ 17; Russell Decl. ¶ 13.)  On May 4, 2020, Zack requested that DCJS change Plaintiff's reason for cessation of employment to a resignation without cause in light of a review that revealed that no disciplinary charges had been drafted, presented to the Town Board or served on Plaintiff.  (Russell Decl. ¶ 14 & Ex. G; Compl. ¶¶ 19-20.)  By letter dated June 1, 2020, DCJS denied Zack's request, stating that, under the Town Code, only the police chief could request a change to Plaintiff's status.  (Russell Decl. ¶ 15 & Ex. H; Compl. ¶ 21.)  Thereafter, the Town Supervisor asked DCJS to reconsider Zack's request, (Russell Decl. ¶ 16 & Ex. I), but DCJS again declined to change Plaintiff's status, (*id.* ¶ 17 & Ex. J).  On August 23, 2020, Dworkin emailed DCJS to reiterate the Police Department's position that Plaintiff was removed for cause.  (*Id.* ¶ 18 & Ex. K.)  He explained that, contrary to Zack's assertion, charges against Plaintiff had already been drafted at the time Plaintiff resigned.  (*Id.* Ex. K.)

On January 3, 2023, Dworkin inquired as to what would be needed to reinstate Plaintiff's certification.  (*Id.* ¶ 20 & Ex. M.)  Dworkin explained that the Town was defending a civil lawsuit filed by Plaintiff – *Bierce v. Schepperly, et al.*, No. 20-CV-320 (S.D.N.Y. 2020) – and that Plaintiff expressed a willingness to settle the lawsuit if the Town reinstated his certification.  (*Id.* Ex. M; *see* ECF No. 52 ("Schulman Decl") ¶ 2.)  David Mahany, DCJS Associate Training

Technician, responded that the police chief would need to send a letter requesting the change in status and setting forth the reasons for the error in the previous report.  (Russell Decl. ¶¶ 15, 20 & Ex. M.)  Dworkin then advised that he did not feel comfortable producing such a letter because he believed that Schepperly had properly reported Plaintiff's cessation of employment as removal for cause.  (*Id.* ¶ 20 & Ex. M.)  The civil case nevertheless settled in January 2023. (ECF No. 52-1; *see* Order, *Bierce*, No. 20-CV-320, ECF No. 91.)  Dworkin left the Police Department on July 20, 2024.  (Russell Decl. ¶ 22.)

By letter dated November 26, 2024, Joseph Clark, Officer in Charge of the Police Department, requested that Plaintiff's status be changed to reflect that he resigned in good standing and that his certification be reinstated.  (*Id.* ¶ 21 & Ex. N.)  Clark explained that Plaintiff was never served disciplinary charges and that he did not resign to avoid any such charges.  (*Id.* Ex. N.)  Thereafter, DCJS confirmed that Clark was the acting police chief following Dworkin's departure and that therefore Clark had the authority to request a change in Plaintiff's status.  (*Id.* ¶ 22.)  DCJS changed Plaintiff's status to a standard resignation on February 10, 2025, effective December 2, 2019, (*id.* ¶ 23 & Ex. O), and Plaintiff was so informed the following day, (*id.* ¶ 24 & Ex. P).  DCJS also informed Plaintiff that his training certification had expired on December 2, 2023 because, pursuant to New York General Municipal Law ("GML") § 209-q(1)(b)(iii), a certificate remains valid for only four years after the date of commencement of an interruption in service.  (*Id.*)  DCJS advised Plaintiff that, if he is appointed as a police officer prior to December 2, 2029, he is eligible to complete a refresher course to renew his certification.  (*Id.*)

Plaintiff is currently serving as the Commissioner of the Police Department, a position that the Police Department has not reported to DCJS as requiring a certification.  (*Id.* ¶ 26.)

### B.    Procedural History

I assume the parties' familiarity with the procedural history of this case, which was set forth on the record at the bench ruling held on May 21, 2024, (*see* Minute Entry dated May 21, 2024), and again at the bench ruling held on October 9, 2024, (*see* Minute Entry dated Oct. 9, 2024).

As relevant to the instant motion, Plaintiff commenced this action under 42 U.S.C. § 1983 on March 21, 2023.  (Compl.)  I issued a bench ruling on May 21, 2024, denying the original Defendants' motion to dismiss Plaintiff's procedural due process claim and his related request for an injunction restoring his certification, and granting the motion as to (1) Defendants Stephanie Russell and David Mahany for failure to allege personal involvement, (2) Plaintiff's request for an injunction enjoining Rosado and her agents from decertifying other police officers without due process, and (3) any compensatory damages sought against any Defendants in their official capacities.  (*See* Minute Entry dated May 21, 2024.)  I also explained that the failure to sufficiently allege personal involvement as to Russell and Mahany could theoretically have been cured by better pleading, and therefore I gave Plaintiff until June 4, 2024 to submit a formal motion to amend on those grounds if he so chose.  (*See id.*)

Plaintiff thereafter filed a motion to amend along with a proposed amended complaint ("PAC").  (ECF Nos. 25, 26-1.)  The PAC advanced a substantive due process claim against Russell and Mahany.  (ECF No. 26-1.)  On October 9, 2024, I issued a bench ruling, denying the motion because Plaintiff failed to plausibly allege a substantive due process claim against the two and therefore the amendment would have been futile.  (*See* Minute Entry dated Oct. 9, 2024.)  I also entered a Discovery Plan and Scheduling Order.  (ECF No. 36.)  On November 1, 2023, remaining Defendant Rosado answered the Complaint.  (ECF No. 37.)

On April 9, 2025, while discovery was ongoing, Defendant Rosado filed a pre-motion letter in anticipation of her motion to dismiss the remaining claim for injunctive relief as moot. (ECF No. 40.)  Plaintiff responded on April 23, 2025, expressing his intent to oppose the motion. (ECF No. 43.)  The same day, I ordered the parties to confer on a proposed briefing schedule for the motion, (ECF No. 44), which the parties submitted on April 28, 2025, (ECF No. 45).  The instant motion followed.

## II.    LEGAL STANDARD

### A.    Rule 12(h)(3)

"[W]hen a party challenges subject-matter jurisdiction after answering the complaint, courts treat the challenge as a motion under Rule 12(h)(3), which provides that 'if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Bell v. Ramirez*, No. 13-CV-7916, 2014 WL 7178344, at *2 (S.D.N.Y. Dec. 9, 2014) (quoting Fed. R. Civ. P. 12(h)(3)).[1]  "[T]he standard governing a Rule 12(h)(3) motion is the same as that governing a motion under Rule 12(b)(1)." *Gazzola v. Hochul*, No. 22-CV-1134, 2025 WL 2771835, at *8 (N.D.N.Y. Sept. 26, 2025), *appeal filed*, No. 25-2715 (2d Cir. Oct. 28, 2025); *see Islam v. Hochul*, No. 20-CV-2328, 2022 WL 4058987, at *3 (E.D.N.Y. Sept. 2, 2022) ("[T]he distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same standards are applicable to both types of motions.").

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d

---

[1] Unless otherwise indicated, case quotations omit internal citations, quotation marks, footnotes and alterations.

Cir. 2009).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see*

*Seljak v. Pervine Foods, LLC*, No. 21-CV-9561, 2023 WL 2354976, at *4 (S.D.N.Y. Mar. 3,

2023).  "The party invoking federal jurisdiction bears the burden of establishing" that it exists.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  As noted, "[i]n resolving a motion to

dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint

. . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction,"

*Fountain v. Karim,* 838 F.3d 129, 134 (2d Cir. 2016), and "may refer to evidence outside the

pleadings," *Makarova*, 201 F.3d at 113.

### B.  <u>Mootness</u>

"Because [the court's] jurisdiction is constitutionally limited to actual, ongoing cases or

controversies, a party must at all stages have an actual injury likely to be redressed by a

favorable judicial decision."  *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022).

The parties must have a "continued personal stake in the outcome" so that courts "resolve only

real and substantial controversies admitting of specific relief rather than issue decisions advising

what the law would be upon a hypothetical state of facts."  *Id.*; *see Doe v. McDonald*, 128 F.4th

379, 385 (2d. Cir. 2025) ("A case is moot when the issues presented are no longer live or the

parties lack a legally cognizable interest in the outcome.").  "A live controversy remains as long

as a court can fashion *some* form of meaningful relief to award the complaining party, and even

the availability of a *possible* remedy is sufficient to prevent a case from being moot."  *Exxon*

*Mobil*, 28 F.4th at 392 (emphasis in original).  "The hallmark of a moot case or controversy is

that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*,

702 F.2d 380, 386 (2d Cir. 1983); *see Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at

*1 (2d Cir. Dec. 20, 2024) ("Typically, no live controversy remains where a party has obtained

all the relief [it] could receive on the claim through further litigation."), *petition for cert. filed*,

No. 24-1015 (U.S. Mar. 24, 2025); *Massa Constr. Inc. v. Empire State Carpenters Fringe*

*Benefits Funds*, No. 12-CV-6405, 2013 WL 4780957, at *5 (E.D.N.Y. Sept. 4, 2013) ("If events

occur subsequent to the filing of a suit which deprive the court of the ability to give the plaintiff

meaningful relief, then the case is moot and must be dismissed.").  "No matter how vehemently

the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case

is moot if the dispute is no longer embedded in any actual controversy about the plaintiff['s]

particular legal rights."  *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023), *cert*

*denied*, 144 S. Ct. 1011 (2024).

III.    **DISCUSSION**

    A.    **Legal Framework**

I begin by setting forth the legal framework that governs police certifications in New

York.

GML § 209-q(1)(a) requires that individuals satisfactorily complete an approved

municipal police basic training program to receive a permanent appointment as a police officer.

N.Y. Gen. Mun. Law § 209-q(1)(a) (McKinney 2003).  A certificate attesting to satisfactory

completion of a basic training program remains valid, as relevant here, "during the holder's

continuous service as a police officer" and "for four years after the date of the commencement of

an interruption in such service where the holder had, immediately prior to such interruption,

served as a police officer . . . for two consecutive years or longer."  *Id.* § 209-q(1)(b)(i), (iii).

The statute defines "interruption" as "a period of separation from employment as a police officer

. . . by reason of such officer's leave of absence, resignation or removal, other than removal for cause." *Id.* § 209-q(1)(c).  Where the interruption does not exceed ten years, the certificate will be restored upon satisfactory completion of an approved police officer refresher course.  *Id.* § 209-q(1)(b)(iv).

Pursuant to N.Y. Comp. Codes R. & Regs. tit. 9, § 6056.2(g) (2017), as it read at the time Plaintiff resigned, "removal for cause" included, as relevant here, "removal for incompetence or misconduct . . . by an employee's resignation or retirement while a disciplinary process has commenced . . . which may result in removal."  (Russell Decl. Ex. A at 1.)[2]  Removal for cause results in the immediate invalidation of a certificate under N.Y. Comp. Codes R. & Regs. tit. 9, § 6056.4(d) (2017).  (*Id.* at 3.)

### B.    Merits

Defendant argues that Plaintiff's request for an injunction restoring his certification is moot because DCJS has already changed his status from removal for cause to a standard resignation – the outcome he would have sought at a hearing had he been afforded that process. (*See generally* ECF No. 51 ("D's Mem.").)  Defendant contends that the property interest underlying Plaintiff's procedural due process claim was in a certificate that lapsed after a four-year interruption in service and that if the Court were to retroactively restore Plaintiff's certification after a four-year lapse, it would be granting Plaintiff relief beyond the extent of his property interest.  (*See id.* at 11-12, 14-15.)  According to Defendant, Plaintiff has received all

---

[2] N.Y. Comp. Codes R. & Regs. tit. 9, § 6056 was amended as of October 16, 2021 to "redefine removal for cause and establish a process for the DCJS to correct any material inaccuracy reported by a law enforcement agency which affects the certification standing of an officer."  *Luna v. NYC Taxi & Limousine Comm'n*, No. 21-CV-1408, 2022 WL 20319227, at *18 n.18 (E.D.N.Y. Sept. 7, 2022).  Because Plaintiff resigned on December 2, 2019, the pre-amendment version is applicable here.  *See id.*  Russell Decl. Ex. A is the version in effect when Plaintiff resigned.

the relief to which he is entitled by virtue of DCJS reversing the classification that resulted in the invalidation of his certification. (*See id.* at 11.)  Plaintiff argues that the change in status did not moot his request for injunctive relief because he has not been restored to the position in which he would have been but for the alleged due process violation. (*See generally* ECF No. 54 ("P's Opp.").)  According to Plaintiff, that violation, which invalidated his certification, forced him into the four-year interruption in police service, and thus the relief suited to the alleged violation is the restoration of his certification even though more than four years have elapsed. (*See id.* at 6-9.)

Ultimately, whether the claim for injunctive relief is moot depends on the nature and extent of Plaintiff's property interest and whether Plaintiff, if successful, would be entitled to relief beyond the change in status.

### 1.      Property Interest

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  "Applying this framework, [the Second Circuit has] held an interest in an occupational license may be protected, so long as a plaintiff can demonstrate a legitimate claim of entitlement grounded in established law." *Cullen v. Mello*, No. 23-413, 2024 WL 1904571, at *1 (2d Cir. May 1, 2024) (summary order).  "[A] legitimate claim of entitlement will be found to exist where, under applicable state law, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 195 (2d Cir. 2018).  "Thus, a property interest in a license or permit largely turns on whether the

issuing authority lacks discretion to deny the permit, *i.e.*, whether the authority is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Id.*

Here, Defendant does not dispute that Plaintiff had a protected property interest in his basic training certificate, and I am satisfied that Plaintiff had such an interest. Under New York law, an individual is entitled to a basic training certificate upon satisfactory completion of an approved municipal police basic training program. *See* N.Y. Gen. Mun. Law § 209-q(1)(a). Once issued, the certificate remains valid during the holder's "continuous service as a police officer" and specified periods of "interruption" in service. *Id.* § 209-q(1)(b)(i)-(iv). A certificate may be immediately invalidated only when the holder is either removed for cause – which is defined as "removal for incompetence or misconduct," N.Y. Comp. Codes R. & Regs. tit. 9, § 6056.2(g) (2017) – or removed during a probationary period, *see id.* § 6056.4(c), (d). "Where a license can be suspended only upon a satisfactory showing of misconduct, the licensee has a property interest in his license sufficient to invoke the protection of the Due Process Clause." *Spinelli v. City of N.Y.*, 579 F.3d 160, 169 (2d Cir. 2009). Thus, Plaintiff had a property interest in his basic training certificate. *See Cullen*, 2024 WL 1904571, at *2 (plaintiff had protected property interest in police certification card where applicable laws mandated entry-level requirements and post-hire training programs but gave agency no discretion to deny certification card); *Spinelli*, 579 F.3d at 169 (plaintiff had protected property interest in gun dealership license where city could suspend or revoke license only for "good cause"); *Martorelli v. Cossette*, No. 10-CV-236, 2012 WL 1067631, at *3-4 (D. Conn. Mar. 30, 2012) (plaintiff had protected property interest in pawnbroker license where city could revoke license only "for cause").

Defendant argues instead that Plaintiff's property interest in the certificate is cabined by the limits prescribed by New York law, such that Plaintiff had no interest in the certificate itself

11

after his four-year lapse in police service.  (*See* D's Mem. at 13-16.)  It is well settled that property interests "last[] only for the term of the license."  *Ace Partners, LLC*, 883 F.3d at 202 (collecting cases); *see Hawkins v. Steingut*, 829 F.2d 317, 322 (2d Cir. 1987) ("[N]o cognizable property right would be created where the controlling state law provides for a fixed term of employment and deems the position to be vacant once that term expires."); *33 Seminary LLC v. City of Binghamton*, 120 F. Supp. 3d 223, 249 (N.D.N.Y. 2015) ("Any constitutionally protected property interest [plaintiff] may have had in the building permits expired when the term of the permit expired . . . ."), *aff'd*, 670 F. App'x 727 (2d Cir. 2016) (summary order).

Here, New York law places certain durational limits on the basic training certificate, including that for officers who have served two or more consecutive years, the certificate will lapse "four years after the date of the commencement of an interruption in . . . service."  N.Y. Gen. Mun. Law § 209-q(1)(b)(iii).  An "interruption" in service is defined as "a period of separation from employment as a police officer . . . by reason of such officer's leave of absence, resignation or removal, other than removal for cause."  *Id.* § 209-q(1)(c).  After a four-year interruption in service, a certificate may be restored only upon satisfactory completion of an approved police officer refresher course within ten years of the commencement of the interruption.  *Id.* § 209-q(1)(b)(iv).

Plaintiff alleges that he resigned from the Police Department on or about December 2, 2019, due to Schepperly's conduct.  (*See* Compl. ¶ 11.)  Under the terms of the statute, Plaintiff's resignation triggered an "interruption" in police service.  Had DCJS treated Plaintiff's cessation of employment as a standard resignation from the time that it occurred, Plaintiff's certification would have lapsed on December 2, 2023, and Plaintiff would only be entitled to reinstatement of his certificate upon satisfactory completion of a refresher course by December 2, 2029.  Plaintiff

12

contends, however, that because DCJS initially entered his status as a removal for cause, which automatically invalidated his certification, and because DCJS did not change his status until after the four-year interruption period lapsed, Plaintiff could not obtain a police position to end the interruption and retain his certification. (*See* P's Opp. at 5-9.) Plaintiff thus maintains that he is entitled to injunctive relief in the form of reinstatement of his certification.

The question then is to what relief Plaintiff is entitled where the certification in which he claims a property interest has expired under applicable state law.

### 2.    Relief Available

Defendant argues that "the normal remedy for a procedural due process violation is to order a defendant to provide the process due," which Defendant claims is no longer necessary given the change in status. (D's Mem. at 16.) If a hearing were the only relief to which Plaintiff would be entitled if he succeeded on the merits, I would agree that the change in status mooted Plaintiff's claim. But courts have not limited the injunctive relief available in procedural due process cases to simply an order mandating the process due under the Fourteenth Amendment. *See, e.g.*, *Brody v. Vill. of Port Chester*, 345 F.3d 103, 120-21 (2d Cir. 2003) (plaintiff entitled to return of property "if he proves that any denial of due process made a difference in the outcome"); *Doe v. N. Mich. Univ.*, 393 F. Supp. 3d 683, 693 (W.D. Mich. 2019) (plaintiff entitled to pursue claim for prospective relief in form of reinstatement as remedy for violation of procedural due process right); *Galbreath v. Hale Cnty., Ala. Comm'n*, No. 15-CV-308, 2017 WL 3402964, at *2-5 (S.D. Ala. Aug. 8, 2017) (rejecting argument that only prospective relief available for procedural due process violation is order that hearing take place and holding that reinstatement to employment position is an available remedy). Accordingly, the Court must consider whether prospective injunctive relief, beyond ordering a hearing, is available here.

13

The parties have not identified, nor has the Court separately found, a case addressing whether reinstatement of a license or certificate is an available remedy for a procedural due process violation in a case where, as here, the license or certificate has expired.  But several courts have addressed whether reinstatement to an employment position is an appropriate remedy for an alleged procedural due process violation that resulted in a wrongful termination.  In *Galbreath*, the court held that reinstatement is an available remedy for a pre-termination procedural due process violation where the jury found that plaintiff's termination was unjustified.  *See* 2017 WL 3402964, at *3-4.  In so holding, the court emphasized that, because plaintiff's employment contract had not yet expired, reinstatement would neither provide a windfall to plaintiff nor work an inequity upon defendants.  *See id.* at *5.  Rather, reinstatement would ensure that both parties received the benefit of the bargain under the standing employment agreement.  *See id.*  But the court nevertheless concluded that, although reinstatement was an available remedy, it was not a feasible one in light of the animosity between the parties.  *See id.* at *5-6.  The court therefore awarded front pay through the end of the contract.  *See id.* at *7.  Similarly, in *Wagner v. Little Rock Sch. Dist.*, 373 F. Supp. 876 (E.D. Ark. 1973), the court held that "a teacher is entitled to reinstatement with back pay *until the contract finally expires* or school authorities terminate a teacher's employment in a constitutional manner," *id.* at 883-84 (emphasis added).

Where, however, the contract has expired, at least two courts have held that reinstatement is not an appropriate remedy for a procedural due process violation based on a property interest. *See Rogan v. Lewis*, 975 F. Supp. 956, 967 n.16 (S.D. Tex. 1997) ("Because Plaintiff's contract was for a one year term, she only had a property interest in her continued employment with [defendant] for that year.  Therefore, it does not appear that the Board would have any legal

14

obligation to reinstate her or give her back pay for the period after her contract would have expired."); *Morris v. Bd. of Ed. of Laurel Sch. Dist.*, 401 F. Supp. 188, 212 (D. Del. 1975) ("Where a teacher is non-tenured . . . and is discharged during the term of a contract limited in time, reinstatement after expiration of the contract term has been found to be inappropriate and relief has been limited to damages accruing during the contract term."). *But see Grosz v. Indiana*, 730 F. Supp. 1474, 1481 n.7 (S.D. Ind. 1990) (reinstatement after expiration of employment contract viable remedy for deprivation of liberty interest).

Applying those principles here, I conclude that reinstatement of Plaintiff's certification is not an available remedy. As set forth above, state law did not provide Plaintiff with a protected property interest in a perpetual certification, but only in one that expires after a four-year interruption in service. When Plaintiff resigned on December 2, 2019, the interruption period began to run. Because Plaintiff did not obtain a police position within the four-year period, his certificate expired on December 2, 2023. To reinstate Plaintiff's certificate at this point would therefore expand Plaintiff's property interest beyond that prescribed by New York law.

I am sympathetic to Plaintiff's argument that reinstatement here is uniquely appropriate because Plaintiff could not have obtained a police position, and prevented the lapse in his certification, due to his removal for cause status. But Plaintiff resigned from the Police Department on his own accord, (*see* Compl. ¶ 11), and there is no evidence in the record that Plaintiff attempted, or even wanted, to secure a police officer position elsewhere. Indeed, Plaintiff admits that he was unaware of his for-cause designation and the resulting invalidation of his certificate for a month after his resignation, (*id.* ¶ 16; *see* Russell Decl. ¶¶ 8, 12), but there is no evidence that Plaintiff sought new employment as a police officer even during that window. Although Plaintiff's counsel contends that Plaintiff "would have rescinded his resignation and

15

gone back to work" had he been able to show DCJS that his resignation was not for cause, (P's Opp. at 7), "an attorney's unsworn statements in a brief are not evidence," *Flores v. Bondi*, 152 F.4th 73, 81 (2d Cir. 2025), and in any event there is no evidence that an officer can rescind a resignation. On the facts here, where Plaintiff has not shown that he would have been employed as a police officer were it not for the for-cause designation, reinstatement of Plaintiff's certification despite the four-year lapse would be a windfall in the sense that it would give him more than that to which he would have been entitled under state law.

Moreover, even if the record contained evidence that Plaintiff would have been hired as a police officer during the four-year period had his certification not been invalidated, the Court's inability to fully rectify such an injury would be of Plaintiff's own making, at least in substantial part. He has been aware since January 2020 that his resignation was reported as being for cause. (Compl. ¶ 16.) Indeed, on January 14, 2020, through the same counsel representing him in this case, he sued Schepperly and the Town for First Amendment retaliation based on, among other things, Schepperly reporting the resignation to DCJS as for cause. (*See* Complaint, *Bierce*, No. 20-CV-320, ECF No. 1 ¶ 57.) Yet he did not bring this case until March 21, 2023, and did not seek a preliminary injunction or otherwise seek to expedite this litigation so that a resolution would be reached before the four years ran. Knowing (at least through counsel) that the remedies available in federal court suits against state employees in their official capacities under § 1983 are limited to prospective injunctions, *see, e.g., In re Deposit Ins. Agency*, 482 F.3d 612, 617-18 (2d Cir. 2007), and thus that the only relief he might get out of this case would be an injunction requiring a hearing, or perhaps reversing the invalidation of his certification, Plaintiff could have (assuming he would have prevailed on his due process claim) obtained that injunction in time to avoid the certification's lapse, had he acted sooner. His inability to be fully restored to

16

the position in which he would have been absent the alleged due process violation is thus due at least in part to his lack of alacrity in pursuing that claim.

In any event, equitable considerations weigh against restoring Plaintiff's certificate. As Defendant explains and common sense dictates, "New York's statutory scheme is based on the obvious concern that when police officers leave their employment, their abilities naturally deteriorate over time, . . . so that after four years, but only up to ten years, a refresher course is required to maintain the certification to ensure the continuity of their qualifications." (ECF No. 55 ("D's Reply") at 8 (citing N.Y. Gen. Mun. Law §§ 209-q(1)(b)(iii), (iv)).). During a four-to-ten year lapse in service, physical fitness or firearms accuracy may deteriorate; the law governing police actions may change; and law enforcement means and methods may become more sophisticated. Here, regardless of the circumstances surrounding Plaintiff's interruption in service, it is undisputed that Plaintiff has not served as a police officer since December 2, 2019. The state and the public have a clear interest in ensuring that Plaintiff receives updated training – either through a refresher course if completed by December 2, 2029, or through completion of the basic training program thereafter – should Plaintiff return to police service in the future.

I therefore find that Plaintiff would not be entitled to reinstatement of his certification if he had prevailed on the merits. Because DCJS has already changed Plaintiff's status to a standard resignation, Plaintiff has received all the relief to which he is entitled. Accordingly, Plaintiff's claim for injunctive relief is moot and must be dismissed.[3]

---

[3] "The exceptions to the mootness doctrine include voluntary cessation cases and cases capable of repetition but evading review." *Srour v. New York City*, 117 F.4th 72, 81 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025). Plaintiff neither raised these exceptions to the mootness doctrine nor responded to the arguments raised in Defendant's opening brief against their application, (*see* D's Mem. at 17-22), so Plaintiff has conceded that they do not apply, *see Sussman Sales Co. v. VWR Int'l, LLC*, No. 20-CV-2869, 2021 WL 1165077, at *16 (S.D.N.Y. Mar. 26, 2021) ("Plaintiff does not respond to these arguments in its opposition brief, and the

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the case as moot is

GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF

No. 50), and close the case.

**SO ORDERED.**

Dated:  November 25, 2025
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

Court will treat them as conceded."), *reconsideration granted in part on other grounds*, 2021 WL 6065760 (S.D.N.Y. Dec. 21, 2021); *Ventillo v. Falco*, No. 19-CV-3664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) ("As Plaintiff did not respond to Defendants on this point, he effectively conceded the argument by his failure to respond.").

Plaintiff likewise failed to respond to Defendant's argument that the claim for declaratory relief should be dismissed.  (*See* D's Mem. at 22-23.)  Accordingly, Plaintiff has abandoned that claim, and it is dismissed.  *See Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 468 (S.D.N.Y. 2023) ("In the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of those claims and necessitates their dismissal."); *Randall v. Dish Network, LLC*, No. 17-CV-5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) ("A district court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").